**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DAVID MCCAIN,

      Petitioner,

   v.                              **Case No. 2:04-cv-135**
                                             **JUDGE GRAHAM**

WANZA JACKSON,                  **Magistrate Judge ABEL**

      Respondent.

<u>**REPORT AND RECOMMENDATION**</u>

      Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, as amended, respondent's return of writ and supplemental return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

      **OVERVIEW.** Petitioner challenges the constitutionality of his state court convictions for two counts of burglary, two counts of money laundering, forgery, and four counts of theft. He pleads eight grounds for relief. Respondent argues that grounds 1-4 and 6-8 are procedurally barred from review in federal habeas corpus because petitioner failed to present them on direct appeal to the Supreme Court of Ohio. Respondent argues that ground 5 is without merit. For the reasons set out below, the Magistrate Judge agrees that all of petitioner's claims except ground 5 are procedurally barred and that ground 5 is without merit.

**I. FACTS**

      This case involves the following facts, as summarized by the Ohio Tenth District Court of Appeals:

> In the summer of 1999, appellant, along with Maynard Keaton and
> Bobby Lowry, went to the home of seventy-two year old George W.

Klamforth. The three men entered Klamforth's home and appellant demanded that Klamforth give him $6,300. Klamforth told appellant that he did not owe appellant any money. Appellant and Keaton then went upstairs to try to find money that Klamforth may have had in his home. After failing to locate any money, appellant and Keaton forced Klamforth to write a note and declare that he owed them $6,300. Klamforth stated that he did as he was told because he was afraid of appellant, Maynard, and Lowry.

A few days later, appellant and Maynard returned to Klamforth's home. The two men told Klamforth to call the bank and to obtain a loan in order to give them some money. The bank would not give Klamforth a loan, however. Appellant and Keaton then told Klamforth that they wanted the "title" to Klamforth's home. Appellant looked through Klamforth's papers to find the "title" and he then took the title.

Appellant returned to Klamforth's home a few days later and told Klamforth to transfer the title to appellant. In order to effectuate the transfer, appellant drove Klamforth to the Ohio Bureau of Motor Vehicles so that Klamforth could obtain a state identification card. Appellant then took Klamforth to Circleville to have the documents notarized. At trial, Klamforth stated that he did not want to transfer the title to appellant, but that he did so because he was afraid. Klamforth testified that if he did not sign it, appellant "might have done something" to him.

Although appellant demanded the title from Klamforth, appellant told Klamforth that he could continue to live in the house and that appellant would pay Klamforth $6,000. Appellant did not, however, ever give Klamforth any money for the property.

Appellant, Keaton, and Lowry eventually learned that Klamforth possessed approximately $10,000. After a series of phone calls and visits from appellant, Keaton, or Lowry, Klamforth issued checks that resulted in Klamforth losing all of his money.

Appellant, Lowry, and Keaton also victimized ninety-four year old Vivian Dollmeyer. The three men went to her home, pushed their way in through the door and pretended to perform various tasks around her home. The tree men then demanded to be paid for their "work." While at her home, appellant took a book of Dollmeyer's checks. Appellant's ex-wife later forged one of the checks in order to pay for furniture that she and appellant "purchased."

2

The police subsequently interviewed appellant. At first, appellant denied that he knew anything about his ex-wife's forgery. Later, he later admitted that he gave Dollmeyer's check book to his ex-wife. Appellant told Lancaster Police Detective Rod Sandy that "it was [appellant's] idea to purchase the furniture and he's the person who gave his ex-wife * * * the check book and had her write the check to purchase the furniture."

When the police questioned appellant about taking money from Dollmeyer, appellant claimed that he only received $25 for "gas money."

On February 2, 2001, the Pickaway County Grand Jury returned a twelve-count indictment charging appellant with the following offenses: (1) engaging in a pattern of corrupt activity, in violation of R.C. 2923.32; (2) theft, in violation of R.C. 2913.02; (3) theft, in violation of R.C. 2913.02; (4) burglary, in violation of R.C. 2911.12; (5) forgery, in violation of R.C. 2913.31(A)(3); (6) theft, in violation of R.C. 2913.02; (7) burglary, in violation of R.C. 2911.12; (8) money laundering, in violation of R.C. 1315.55(A)(3); (9) theft, in violation of R.C. 2913.02; (10) money laundering, in violation of R.C. 1315.55(A)(3); (11) money laundering, in violation of R.C. 1315.55(A)(3); and (12) theft, in violation of R.C. 2913.02. [FN2]

FN2. The indictment contained eighteen counts and was brought against appellant, Keaton, and Lowry. Counts one through twelve alleged that appellant, either alone or in conjunction with Keaton or Lowry, committed the criminal activity. Counts thirteen through eighteen did not allege that appellant committed any of the crimes named therein. Instead, counts thirteen through eighteen involved criminal conduct by Keaton and Lowry.

At trial, Lowry testified for the prosecution. Lowry stated that he had visited Klamforth's home with appellant and that he knew that appellant had "stolen" Klamforth's land. Lowry also stated that he and appellant had taken money from Dollmeyer. Lowry testified that they would pretend to perform various tasks at Dollmeyer's residence and demand that Dollmeyer pay them for the "work" they performed.

Over appellant's objection, Lowry explained that between 1996 and 1998 he had worked with a group of people known as the "Circleville 30." This group of more than thirty people from the Circleville area, Lowery related, would "go around and steal from the elderly," trick

3

the elderly. Lowry stated that in 1999, he perceived appellant to be a member of the Circleville 30.

On August 6, 2001, the jury found appellant guilty of counts one through ten. The trial court sentenced appellant to thirty years in prison. Appellant filed a timely notice of appeal.

Exhibit I to Return of Writ.

## II. PROCEDURAL HISTORY

The procedural history of this case is detailed in my December 1, 2004 *Order and Report and Recommendation*, Doc. No. 17, but is repeated here.  Petitioner was indicted by the January 2001 term of the Pickaway County grand jury on engaging in a pattern of corrupt activity, in violation of O.R.C. §2923.32, with a forfeiture specification, two counts of burglary, in violation of O.R.C. §2911.12(A)(1), three counts of money laundering, in violation of O.R.C. §1315.55(A)(3), forgery, in violation of §2913.31(A)(3), and eleven counts of theft, in violation of O.R.C. §2913.02. Exhibit A to Return of Writ.  On July 6, 2001, a supplemental indictment was filed charging petitioner with five counts of forgery, in violation of O.R.C. §2913.31, and engaging in a pattern of corrupt activity, in violation of O.R.C. §2923.32, with a forfeiture specification. Exhibit C to Return of Writ. While represented by counsel, petitioner proceeded to jury trial, and on August 2, 2001, was found guilty of engaging in a pattern of corrupt activity, two counts of burglary, two counts of money laundering, forgery, and four counts of theft. Exhibit D to Return of Writ. On October 1, 2001, petitioner was sentenced to nine years on engaging in a pattern of corrupt activity, seven and six years on burglary, two terms of four years on money laundering, ten months on forgery, three terms of ten months on theft, and twelve months on theft. Counts 1, 4, 7, 8 and 10 of the supplemental indictment were to be served consecutively to each other, and counts 2, 3, 5, 6, and

4

were to be served concurrently to each other and to all of the other sentences imposed. Exhibit F to Return of Writ.[1] Represented by the public defender as new counsel, petitioner filed a timely appeal of his convictions to the Fourth District Court of Appeals. He asserted the following assignments of error:

> 1. The trial court erred when it allowed the State to present irrelevant and prejudicial testimony, in violation of Mr. McCain's right to a fair trial. Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, Sections 5 and 16, Article I of the Ohio Constitution, and Ohio Rules of Evidence 401, 402, and 403.

> 2. The trial court erred in refusing to grant a mistrial when highly prejudicial and inadmissible information was presented to the jury, and the conviction was founded in whole or in part on this information, denying Mr. McCain due process of law. Fifth and Fourteenth Amendments to the U.S. Constitution, Sections 10 and 16, Article I of the Ohio Constitution.

> 3. David McCain's convictions are not supported by the manifest weight of the evidence, thereby denying him due process of law. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution.

> 4. The trial court's sentence of thirty years in prison is contrary to law.

Exhibit G to Return of Writ. On September 27, 2002, the appellate court affirmed the judgment of the trial court. Exhibit I to Return of Writ. Still represented by the public defender, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. He asserted the following propositions of law:

> 1. A criminal defendant's right to a fair trial is violated when the trial court allows the State to present irrelevant and prejudicial testimony. Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, Sections 5 and 16, Article I of the Ohio Constitution, and Ohio Rules

---

[1] Petitioner states that he was sentenced to an aggregate term of thirty years incarceration. *See Petition.*

of Evidence 401, 402, and 403.

2. A criminal defendant's right to due process of law is violated when the trial court refuses to grant a mistrial after a highly prejudicial and inadmissible information is presented to the jury, and the conviction is founded in whole or in part on this information. Fifth and Fourteenth Amendments to the U.S. Constitution, Sections 10 and 16, Article I of the Ohio Constitution.

3. A trial court's imposition of consecutive sentences is contrary to law when it fails to comply with the applicable sentencing statutes. R.C. 2929.14 and 2929.19.

Exhibit J to Return of Writ. On February 19, 2003, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit L to Return of Writ.

On August 25, 2004, petitioner filed a petition for post conviction relief with the state trial court.  Petitioner asserted:

The court erred and violated the defendant's Sixth Amendment rights under the U.S. Constitution by sentencing the defendant to consecutive sentencing when the jury did not find the acts necessary to support consecutive sentencing beyond a reasonable doubt.

Exhibit M to Supplemental Return of Writ.  On September 23, 2004, the trial court dismissed the petition.  Exhibit Q to Return of Writ.  Petitioner filed a timely appeal of the trial court's decision to the state appellate court.  Exhibit R to Supplemental Return of Writ.  On September 5, 2005, the appellate court dismissed the appeal, stating that petitioner's post conviction petition had been untimely.  Exhibit T to Supplemental Return of Writ.  Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  Exhibit U to Supplemental Return of Writ. Apparently, that action is still pending.

On January 5, 2005, petitioner also filed a *pro se* delayed application to reopen his appeal

6

pursuant to Ohio Appellate Rule 26(B). Exhibit V to Supplemental Return of Writ. On April 18,2005, the state appellate court denied the application to reopen the appeal for failure to show good cause for the untimely filing. Exhibit X to Supplemental Return of Writ. Petitioner never filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. *See Exhibits* attached to *Motion to Reactivate Proceedings,* Doc. No. 26. The Clerk of the Ohio Supreme Court refused to file his attempted delayed appeal. *See id.*

On January 14, 2005, petitioner filed a second petition for post conviction relief with the state trial court. Exhibit Y to Supplemental Return of Writ. On February 8, 2005, the trial court denied his petition for post conviction relief as untimely. Exhibit AA to Supplemental Return of Writ. Petitioner apparently never filed an appeal of the trial court's decision.

On February 18, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The petitioner was unconstitutionally charged with engaging in a pattern of corrupt activity (one count), burglary (one count), money laundering (two counts) and theft (one count), or [sic] these criminal laws are unconstitutional in violation of Article I, Section 10 of the Constitution of the United States which in turn violated the petitioner's Fifth and Fourteenth Amendment protections under the Constitution of the United States.
>
> 2. Judge P. Randall Knece failed to recuse himself, divesting him of jurisdiction, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States.
>
> 3. The petitioner's convictions were not supported by the manifest weight of the evidence and the evidence was insufficient to support a jury verdict in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States.
>
> 4. Petitioner received ineffective assistance of counsel in both his

trial court proceedings and his appeal process in violation of the Sixth Amendment of the Constitution of the United States.

5. The petitioner was denied his right to a fair trial in that the trial court allowed inadmissible evidence and testimony before the jury in violation of the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States.

6. The petitioner was denied his right to a fair trial due to prosecutorial misconduct in violation of the Fourteenth Amendment of the United States Constitution.

7. The petitioner was improperly sentenced to thirty (30) years in prison contrary to law.

8. The cumulative effect of the numerous grounds and errors committed by the court, trial counsel, and appellate counsel violated the petitioner's right to due process in violation of the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States.

On February 4, 2004, proceedings were stayed so that petitioner could exhaust state court remedies as to his claims. Doc. No. 20. On September 29, 2005, at petitioner's request, proceedings were reactivated. Doc. No. 27. Respondent has now filed a supplemental Return of Writ. Doc. No. 33. It is the position of the respondent that all of petitioner's claims, with the exception of claim five, are procedurally defaulted, and that claim five is without merit. For the reasons that follow, the Magistrate Judge agrees.

### III. PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard*

*v. Connor*, 404 U.S. 270, 275-76 (1971).  But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id*.  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id*.  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *Id*.  Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  *Id*.  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that his convictions violate Article I, Section10 of the Constitution because they impair the obligation of contracts.  In claim two, petitioner asserts that the trial judge should have recused himself.  In claim three, petitioner asserts that his convictions are against the manifest weight of the evidence, and that there is insufficient evidence to sustain his

convictions.  In claim four, petitioner asserts that he was denied the effective assistance of trial and appellate counsel.  In claim six, petitioner asserts that he was denied a fair trial due to prosecutorial misconduct.  In claim seven, petitioner asserts that he was denied equal protection because he was sentenced more severely than other members of the Circleville 30; he asserts that he was improperly sentenced for allied offenses of similar import; improperly sentenced based on the trial judge's bias against him; and improperly punished by the trial court for refusing to accept a plea offer.  In claim eight, petitioner asserts that he was denied a fair trial due to cumulative error.  All of these claims are readily apparent from the face of the record, and therefore would properly be raised on direct appeal; however, as noted by the respondent, petitioner failed to present any of the foregoing claims to the Ohio Supreme Court.  *See* Exhibit J to Return of Writ.[2]  Further, petitioner may now no longer present such claims to the Ohio Supreme Court under Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).  The state courts therefore were never given an opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default.  This Court deems the first and second parts of *Maupin* to have been met.

To the extent that claim two, in which petitioner asserts that the trial judge should have recused himself, relies on matters not readily apparent from the face of the record, such claim remains procedurally defaulted.  Petitioner presented such claim in his second petition for post conviction relief, *see* Exhibit Y to Supplemental Return of Writ; however, the trial court denied the

---

[2]  Petitioner argued to the Ohio Supreme Court that he was denied a fair trial by admission of testimony by Bobby Lowry regarding criminal activity by the Circleville 30; that a mistrial should have been granted due to admission of an audiotape of petitioner's statement to police that contained references to petitioner's prior incarceration; and that the trial court improperly imposed consecutive sentences under state law.  *See* Exhibit J to Return of Writ.

petition as untimely, and petitioner never filed an appeal of the trial courts decision.  Further, he may now no longer do so, as Ohio does not permit delayed appeals in post conviction actions.  *State v. Nichols,* 11 Ohio St.3d 40, 43 (1984).

Next, the Court must decide whether the procedural rule at issue constitutes an adequate and independent basis upon which to foreclose review of petitioner's federal constitutional claims.  This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims.  *See Maupin v. Smith*, 785 F.2d at 138.  Under this analysis, the procedural rule barring claims one through four, and six through eight, constitutes an adequate and independent state grounds for denying relief.  The state courts must be given a full and fair opportunity to remedy alleged constitutional defects.  The time limitations for filing appeals and the requirement that all available claims be asserted at the first opportunity serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine.  *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra.*

The Court concludes that petitioner has waived his right to present claims one through four, and six through eight for federal habeas corpus review.  Petitioner can still secure review of these claims on the merits if he demonstrates cause as well as actual prejudice from the alleged constitutional violations.  Petitioner has failed to demonstrate either cause for his procedural default or actual prejudice resulting from the alleged constitutional violations.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one

11

who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.

## IV.  CLAIM FIVE

In claim five, petitioner asserts that he was denied a fair trial due to admission of testimony by Bobby Lowry regarding the Circleville 30; petitioner also asserts that the trial judge should have granted a mistrial due to admission of his audiotaped statement to police containing references to his prior incarceration.  In the audiotaped statement at issue, petitioner stated:

> She told me that her and him had been on crack while I was locked up, I was incarcerated and with my brother uh, my oldest brother...
>
> ***
>
> That's when I went to prison.

*Transcript,* at 431-32.

The state appellate court rejected petitioner's claim as follows:

> [A]ppellant argues that the trial court erred by allowing Lowry to testify about his criminal activity that occurred during 1996 to 1998 when appellant had not participated in any of that criminal activity. Appellant contends that Lowry's testimony was irrelevant and highly prejudicial.
>
> Initially, we note that the decision to admit or exclude evidence is within the sound discretion of the trial court. *State v. Bey* (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484. The trial court's decision to admit or exclude evidence cannot be reversed absent an abuse of that discretion. *See, e.g.*, *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071; *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343; *State v. Rooker* (Apr. 15, 1993), Pike App. No. 483. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *See, e.g.*, *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely

12

substitute its judgment for that of the trial court. *See, e.g.*, *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181 (citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 359 N.E.2d 1301).

Although appellant asserts that Lowry's testimony was not relevant to the issue of appellant's guilt or innocence, it is well-established that the state is entitled to "draw the sting" of cross-examination by eliciting on direct examination facts detrimental to its own witness. *State v. Sanders* (2001), 92 Ohio St.3d 245, 256, 750 N.E.2d 90.

It is clearly permissible for a party to 'draw the sting' of cross-examination by bringing out, on direct examination, facts that tend to discredit that party's own witness. *See United States v. Frappier* (C.A.1, 1986), 807 F.2d 257, 259. This is not done to impeach the witness, but to present an image of candor to the trier of fact. Evid.R. 607 was never intended to limit this practice. There is nothing 'intrinsic to the jury's truth-finding function in an arbitrary requirement that opposing counsel's trial strategy may not be undercut.' *Bell v. State* (Fla.1986), 491 So.2d 537, 538. *State v. Tyler* (1990), 50 Ohio St.3d 24, 34, 553 N.E.2d 576; *see, also*, *Sanders.*

In the case at bar, we agree with the trial court that the state was entitled to inquire into its own witness's prior criminal history to "draw the sting" of Lowry's cross-examination. Moreover, we disagree with appellant that the prejudicial impact of Lowry's testimony required the trial court to exclude Lowry's testimony concerning the Circleville 30. Appellant contends that the jury likely was persuaded to find appellant guilty simply because of his alleged association with the Circleville 30.

First, we note that appellant does not object to Lowry's statement that he perceived appellant to be a member of the Circleville 30. Instead, appellant asserts that Lowry's background testimony about Lowry's own association with the Circleville 30 was unduly prejudicial. Because Lowry's testimony related only to his own activity with the Circleville 30 and did not implicate appellant in any of that activity, we fail to see how the testimony prejudiced appellant. As we already have concluded, the state properly questioned Lowry, its own witness, regarding his personal criminal history. The state was entitled to elicit on direct examination what appellant surely would have elicited on cross-examination.

13

Additionally, assuming, *arguendo*, that error exists in the admission of Lowry's testimony concerning the Circleville 30, we believe that any error would constitute harmless error. *See* Crim .R. 52(A) (stating that harmless errors "shall be disregarded"). The record contains other evidence that overwhelmingly supports the jury's finding of guilt. Klamforth and Lowry provided direct testimony concerning appellant's participation in the crimes. Furthermore, appellant admitted to Detective Sandy that he gave Dollmeyer's checks to his ex-wife to forge.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

[A]ppellant asserts that the trial court erred by refusing to grant his motion for a mistrial. Appellant asserts that the state inadvertently permitted the jury to hear appellant's tape recorded statement to Detective Sandy that he previously had been imprisoned. During his interview with Detective Sandy appellant stated, "I was locked up, I was incarcerated * * * [t]hat's when I went to prison." [FN3] Appellant contends that the jury, upon hearing the above statements, could not have continued to be fair and impartial. Appellant thus asserts that he was deprived of his right to a fair and impartial jury. Appellee contends that the "inadvertent" disclosure did not deprive appellant of a fair trial.

FN3. During the jury trial, the trial court offered to give to the jury a "curative instruction" regarding the significance, or the lack thereof, of appellant's interview statement. Appellant's trial counsel considered, then rejected the court's offer obviously in a strategical move to eliminate any further reference and attention to appellant's statement. Of course, trial counsel's decision does not affect our review of this issue.

In evaluating whether a mistrial is proper in a particular case, the Ohio Supreme Court has "declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise." *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (citing *State v. Widner* (1981), 68 Ohio St.2d 188, 189, 429 N.E.2d 1065). Instead, the Ohio Supreme Court " 'has * * * adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his [or her] courtroom warrants the declaration of a mistrial." [FN4] *Glover,* 35 Ohio St.3d at 19, 517

14

N.E.2d 900 (citing *Widner,* supra).

FN4. Both appellant and the state assert that the proper standard for determining whether a mistrial should have been declared in the case at bar is whether "manifest necessity" required the trial court to declare a mistrial. Our research has indicated, however, that the manifest necessity standard is employed when evaluating whether a second trial can be had after a trial court's *sua sponte* declaration of a mistrial or of a mistrial over the defendant's objection.

For example, in *Cleveland v. Wade* (Apr. 10, 2000), Cuyahoga App. No. 76652, the court stated:

"Where the mistrial was granted upon the request of the prosecutor and over the objection of the defendant, the state carries the burden of demonstrating the manifest necessity of the mistrial in order to avoid the double jeopardy bar. *See Arizona v.. Washington* (1978), 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717. However, if the defendant requested the mistrial, there is no bar to retrial. See *United States v. Jorn* (1971), 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 556-557."

And in *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900, the Ohio Supreme Court stated:

"[T]he question of whether, under the double jeopardy clause, there can be a second trial, after a mistrial has been declared, *sua sponte*, depends on whether (1) there is a 'manifest necessity' or a 'high degree' of necessity for ordering a mistrial, or (2) 'the ends of public justice would otherwise be defeated.' " *State v. Widner* (1981), 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (citing *Washington, supra* ).

" 'The overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.' " *State v. Abboud* (1983), 13 Ohio App.3d 62, 63, 468 N.E.2d 155 (quoting *Washington,* 434 U.S. at 511).

Thus, trial courts enjoy broad discretion in ruling on motions for

mistrial. *See, e.g., id.; see, also, State v. Iacona* (2001), 93 Ohio St.3d 83, 100, 752 N.E.2d 937; *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for a mistrial. *See State v. Swain* (Jan. 23, 2002), Ross App. No. 01CA2591; *State v. Pizzillo* (Jan. 17, 2002), Carroll App. No. 746; *State v. Dunham* (Aug. 13, 2001), Butler App. No. CA2000-11-224. We again note that an abuse of discretion connotes more than an error of law or judgment. Rather, an abuse of discretion implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *See, e.g., State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

In examining whether a mistrial is appropriate, a court should use a balancing test under "which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." *Id.* (citing *State v. Calhoun* (1985), 18 Ohio St.3d 373, 481 N.E.2d 624)*; see, also, United States v. Scott* (1978), 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65. "A defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments" *Id.* (quoting *Wade v. Hunter* (1949), 336 U.S. 684, 687, 69 S.Ct. 834, 93 L.Ed. 974). "[M]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (citing *Illinois v. Somerville* (1973), 410 U.S. 458, 462 463, 93 S.Ct. 1066, 35 L.Ed.2d 425; *Arizona v. Washington* (1978), 434 U.S. 497, 505-506, 98 S.Ct. 824, 54 L.Ed.2d 717).

Generally, evidence tending to show that the defendant committed another crime independent of the crime for which the defendant is on trial is prohibited. *See State v. Breedlove* (1971), 26 Ohio St.2d 178, 183, 271 N.E.2d 238; *State v. Hector* (1969), 19 Ohio St.2d 167, 249 N.E.2d 912. Evidence of a prior offense is prohibited because of its inflammatory nature that it may incite a jury to convict based on past misconduct rather than the offense at hand. *See State v. Allen* (1987), 29 Ohio St.3d 53, 55, 506 N.E.2d 199. In order to be admitted into evidence at trial, evidence of prior acts or prior crimes must meet certain well-defined criteria. When evidence tending to show that a defendant committed other independent crimes is improperly admitted into evidence during a trial, a mistrial may be appropriate.

16

*See Breedlove.*

In the case at bar, we do not believe that the trial court abused its discretion by denying appellant's request for a mistrial. As we noted under our discussion of appellant's first assignment of error, the evidence of appellant's guilt, including appellant's acknowledgment of his involvement in many of the charged crimes, is overwhelming. We find it extremely unlikely that appellant's short statement that he had previously been imprisoned prejudiced appellant or incited the jury to return guilty verdicts. We find nothing in the record to indicate that the jury could not continue to be fair and impartial, or that appellant was deprived of a fair trial. *See, generally, State v. Mobley* (Apr. 5, 2002), Montgomery App. No. 18878 (concluding that a detective's statement that he had obtained a mug shot of the defendant from a prior arrest was not so prejudicial as to require a mistrial); *State v. Chappel* (Nov. 6, 1997), Franklin App. No. (holding that a law enforcement officer's tape recorded statement that the defendant had "spent that much time in prison" did not require the trial court to grant the defendant's motion for a mistrial, especially when the record contained overwhelming evidence of the defendant's guilt). In fact, the jury reviewed all evidence regarding the charged crimes and acquitted appellant on one count.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

Exhibit I to Return of Writ.

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

17

*Id*. Additionally, the state court's decision is binding on this Court unless that decision is contrary

to or involves an unreasonable application of clearly established federal law as determined by the

United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

> Holdings of the Supreme Court, not *dicta,* clearly establish federal law. *Id.* at 412, 120 S.Ct. 1495. Ultimately, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. 12, 17, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003).

*Davis v. Straub,* 430 F.3d 281, 286 (6th Cir. 2005), citing *Williams v. Taylor, supra.*  Petitioner has

failed to meet this standard here.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980), *cert. denied*, 456 U.S. 980 (1982).

> Generally, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir.2002) (citing *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.1994)).

*Biros v. Bagley,* 422 F.3d 379, 391 (6th Cir. 2005). For the reasons discussed by the state appellate court, review of the record fails to indicate that such are the circumstances here, particularly in view of the substantial evidence of guilt.

This Court agrees with the conclusion of the state appellate court, that petitioner was not denied a constitutionally fair trial by admission of Lowry's statement that he believed petitioner was a member of the Circleville 30. Likewise, petitioner has failed to establish that the state court's appellate court's decision affirming the trial court's refusal to grant his request for a mistrial is contrary to or an unreasonable application of federal law. *See Williams v. Taylor, supra.*

When reviewing the trial decision of a federal district court, the

19

standard of review for a decision not to grant a mistrial is abuse of discretion. *United States v. Chambers,* 944 F.2d 1253, 1263 (6th Cir.1991). When conducting habeas review of a trial decision of a state court not touching on a specific provision of the Bill of Rights, the standard of review is even higher: reversal is not warranted unless the comment "was potentially so misleading and prejudicial that it deprived [the defendant] of a constitutionally fair trial." *Donnelly v. DeChristoforo,* 416 U.S. 637, 641- 42, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (noting that "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice' "). Specifically, habeas review of this state decision involves "the narrow [review] of due process, and not the broad exercise of supervisory power that [a federal appellate court] would possess in regard to (its) own trial court." *Id.*

... In *United States v. Forrest,* 17 F.3d 916 (6th Cir.1994), we listed five factors to consider in determining whether a mistrial is warranted after an improper reference: (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant. *Id.* at 920.

In *Forrest,* the trial judge specifically directed the prosecutor to warn a witness (an ATF agent) not to testify to Forrest's criminal past. *Id.* Nonetheless, the agent twice referenced the fact that Forrest had been imprisoned for robbery. *Id.* We found that "the agents 'blurting' seem[ed] anything but accidental," but that the trial judge had given a clear admonition and the prosecution had offered ample other evidence of guilt. *Id.* at 921. Although noting that it was a "close question" we found no abuse of discretion in the district court's failure to grant a mistrial. *Id.* That case was decided in the stricter supervisory capacity of direct review, not in a habeas corpus petition.

*Zuern v. Tate*, 336 F.3d 478 (6th Cir. 2003)(holding that trial court's refusal to grant a mistrial after statement by prosecution witness that defendant, who was charged with murder, had previously committed murder, did not deny defendant a fundamentally fair trial.)  The record here fails to reflect any bad faith on the part of the prosecutor; the statement referred to was unsolicited and brief,

and the evidence against petitioner substantial; and defense counsel rejected the trial court's offer to issue a curative instruction.  *Id.*, at 436; 566.

Claim five is without merit.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel              
United States Magistrate Judge